# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CONSTANT A. WEST, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security, | : | |
| Defendant. | : | No. 09-2650 |

## MEMORANDUM RE: SOCIAL SECURITY APPEAL

**Baylson, J.**            April 26, 2010

Plaintiff, Constance A. West, seeks judicial review of the decision by the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Social Security Disability Insurance Benefits ("SSDI") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-83(c) (2000). Jurisdiction is established under § 1383(c)(3), which incorporates § 405(g) of the Act. 42 U.S.C. §§ 405(g), 1383(c)(3). After careful and independent consideration of the matter, and for the following reasons, the Court will remand the case to the Commissioner for further proceedings consistent with this opinion.

## I. Background and Procedural History

On February 7, 2007, Plaintiff applied for SSDI and SSI benefits, alleging disability beginning November 1, 2005. (R. 52-54; 166-172; 181.) Plaintiff was forty-nine (49) years old on the date she alleges she became disabled (R. 52), and has past relevant work experience as a salesperson, assistant sales manager, check cashier, supervisor cashier, and head teller. (R. 184-

187; 199-201.) Plaintiff alleges that she is a major manic depressive and suffers from multiple severe medical impairments including back pains, a heart murmur, cancer polyps that were removed and are in remission (R. 182), small hiatal hernia, hypertension, biopolar disorder, and a history of polysubstance abuse (R. 99, 104-105, 116, 118-134, 137-140, 159-161).

The Social Security Administration denied Plaintiff's application on August 7, 2007. (R. 41-45; 174-178.) On August 13, 2007, Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (R. 46.) The hearing was held before ALJ Margaret A. Lenzi on April 23, 2008. (R. 179-204.) In her written decision of May 12, 2008, ALJ Lenzi denied Plaintiff's application for benefits, and held that Plaintiff was not disabled within the meaning of the Act. (R. 20-32.) The ALJ found that Plaintiff suffered from severe impairments including a back condition, hypertension, headaches, bipolar affective disorder, and polysubstance abuse and dependence disorder, but that Plaintiff's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1. (R. 25-27.) The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to perform light work, subject to certain limitations. (R. 27-30.) Although the ALJ found that Plaintiff was unable to perform any past relevant work, the ALJ found that based on Plaintiff's age, education, work experience, and RFC, there were a significant number of jobs in the national economy that she could perform. (R. 30-32.) Thus, the ALJ found that Plaintiff was not "disabled" under the Act. (R. 32.)

Plaintiff timely filed a request for review of the ALJ's decision on February 13, 2009. (R. 9-12.) On April 9, 2009, the Appeals Council denied Plaintiff's request for review, affirming the ALJ's decision. (R. 4-6.) Plaintiff subsequently filed the instant action, requesting that this

Court reverse the Commissioner's decision, or, in the alternative, remand the case to the Commissioner for receipt of further evidence. (Doc. Nos. 3, 9.)

## II. Legal Standards

### A. Jurisdiction

The Social Security Act provides for judicial review by this Court of any "final decision of the Commissioner of Social Security" in a disability proceeding. 42 U.S.C. § 405(g) (2000). A district court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Id.

### B. Standard of Review

On judicial review of the Commissioner's decision, the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." Id. "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . .'" Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (quoting Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003)). In reviewing the record for substantial evidence, however, this Court must "not 'weigh the evidence or substitute [its own] conclusions for those of the fact finder.'" Rutherford, 399 F.3d at 552 (quoting Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)). This Court's review of the legal standards applied by the ALJ is plenary. See Allen v. Barnhart, 417 F.3d 396, 398 (3d Cir. 2005).

### C. Disability Claims Analysis

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner of the Social Security Administration has promulgated regulations requiring a five-step sequential analysis to determine the eligibility of claimants for benefits. First, if the claimant is engaged in substantial gainful activity, the claim must be denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claim must be denied unless the claimant is suffering from a severe impairment or combination of impairments that significantly limits physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Third, if the claimant's severe impairment(s) meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claim is approved. 20 C.F.R. §§ 404.1520(d), 416.920(d).

Fourth, if the claim is not approved under Step 3, the claim will be denied if the claimant retains the residual functional capacity ("RCF") to meet the physical and mental demands of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). Finally, if the claimant does not retain the RFC to perform past relevant work and there is no other work in the national economy that the claimant can perform, considering his or her RFC, age, education, and past relevant work experience, then the claim will be approved. 20 C.F.R. §§ 404.1520(g), 416.920(g).

### III.   Parties' Contentions

Plaintiff makes only one argument to support her claim that the ALJ's finding was not supported by substantial evidence. Specifically, Plaintiff argues that the ALJ's failure to discuss or evaluate "global assessment of functioning" ("GAF") scores of 50 or below given to Plaintiff by the WES Medical Centers constitutes a reversible error of law requiring remand.

Plaintiff asserts that she twice received GAF scores of 50 (on March 20, 2006, and on August 5, 2006) that the ALJ did not mention or discuss in her written report. Further, Plaintiff asserts that she received GAF scores of 45 (on July 9, 2007), 42 (on September 7, 2007), and 45-50 (on December 18, 2007), and submitted these records in advance of Plaintiff's hearing before the ALJ. Nevertheless, Plaintiff argues that these records were not included as part of the official transcript submitted by the Commissioner, and that the ALJ failed to address these scores. For these reasons, Plaintiff argues that the ALJ's failure to evaluate her five GAF scores of 50 or below constitutes a reversible error of law requiring remand, and that the ALJ's finding is not supported by substantial evidence. In the alternative, Plaintiff argues that she has been "disabled" since her alleged onset date of November 1, 2005, and that this Court should reverse the Commissioner's decision and rule that she is eligible to receive benefits.

The Commissioner counters that substantial evidence supports the ALJ's finding that Plaintiff was not disabled. The Commissioner argues that Plaintiff's claim lacks merit where the ALJ did address Plaintiff's mental status during the relevant time period and accounted for all of Plaintiff's proven mental functional limitations in her RFC assessment, thus rendering a specific discussion of Plaintiff's GAF scores unnecessary. Specifically, the Commissioner argues that: (1) GAF ratings have no direct legal or medical correlation to the Commissioner's finding on the issue of disability; (2) a GAF score does not indicate how long the symptoms or limitations will last; (3) the ALJ specifically addressed Plaintiff's mental status during the relevant time period and accounted for all of her proven mental functional limitations in her RFC assessment; (4) GAF scores of 42-50 do not automatically translate into a finding that Plaintiff had work-preclusive mental limitations; and (5) the ALJ was not required to specifically address Plaintiff's

GAF scores of 50 and below because the overwhelming evidence of record discounted their probative value, rendering the GAF scores irrelevant. The Commissioner asserts that the vocational expert's testimony that an individual with Plaintiff's vocational profile and proven physical and mental limitations would be capable of performing hundreds of thousands of jobs in the national economy constitutes substantial evidence that Plaintiff was not "disabled" under the Act.

## IV. Discussion

### A. ALJ's Evaluation of Plaintiff's GAF Scores

GAF scores are used by mental clinicians and doctors to rate the social, occupational, and psychological functioning of adults. Irizarry v. Barnhart, 233 Fed. Appx. 189, 190 n.1 (3d Cir. 2007). The GAF scale, designed by the American Psychiatric Association, ranges from 1 to 100, with a score of 1 being the lowest and 100 being the highest.[1] See Debaise v. Astrue, 2010 WL 597488, at * 5 n.7 (W.D. Pa. Feb. 16, 2010); Watson v. Astrue, 2009 WL 678717, at *5 (E.D. Pa. Mar. 13, 2009). A score between 41 and 50 indicates "serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)." Watson, 2009 WL

---

[1]An individual with a GAF score of 60 may have "[m]oderate symptoms" or "moderate difficulty in social, occupational, or school functioning;" of 50 may have "[s]erious symptoms (e.g., suicidal ideation . . . .)" or "impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job);" of 40 may have "[s]ome impairment in reality testing or communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking or mood;["] of 30 may have behavior "considerably influenced by delusions or hallucinations" or "serious impairment in communication or judgment (e.g., . . . suicidal preoccupation)" or "inability to function in almost all areas . . . ;["] of 20 "[s]ome danger of hurting self or others . . . or occasionally fails to maintain minimal personal hygiene . . . or gross impairment in communication." Debaise, 2010 WL 597488, at *5 n.7 (quoting American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th ed. 2000)).

678717, at *5 (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th ed. 2000)); see also Escardille v. Barnhart, 2003 WL 21499999, at *6 (E.D. Pa. June 24, 2003) (noting that a GAF score of 50 indicates "a serious impairment in social and occupational functioning.").

Pursuant to Social Security Administration rules, a claimant's GAF score is not considered to have a "direct correlation to the severity requirements." Watson, 2009 WL 678717, at *5 (quoting 66 Fed. Reg. 50746, 50764-65 (2000)). The rules still note, however, that the GAF remains the scale used by mental health professionals to "assess current treatment needs and provide a prognosis." Id. (quoting 66 Fed. Reg. 50746, 50764-65 (2000)). Accordingly, "a GAF score constitutes medical evidence accepted and relied upon by a medical source and must be addressed by an ALJ in making a determination regarding a claimant's disability." Id. (emphasis in original) (citing Colon v. Barnhardt, 424 F.Supp.2d 805, 812 (E.D. Pa. 2006) (Baylson, J.)). While an ALJ "may properly accept some parts of the medical evidence and reject other parts . . . he must consider all the evidence and give some reason for discounting the evidence he rejects." Id. (citing Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994)).

In the present case, Plaintiff argues that the ALJ's failure to discuss or examine Plaintiff's GAF scores of 50 or below given to her by WES Health Centers requires remand. Indeed, both parties acknowledge that Plaintiff received the following five GAF scores of 50 or below: 50 (on March 20, 2006); 50 (on August 5, 2006); 45 (on July 9, 2007); 42 (on September 7, 2007); and 45-50 (on December 18, 2007). (Pl.'s Reply at 1; Def.'s Br. at 3-4, 4 n.2; R. 116, 118, 225, 232, 235). The ALJ's written opinion did not address or examine these scores, but did, however, twice refer to a GAF score of 55 given to Plaintiff by the WES Health Centers in a psychiatric

evaluation report dated September 21, 2006.[2] (R. 26, 30.)

The issue of whether remand is required where an ALJ fails to address or examine GAF scores of 50 or below has been examined numerous times by courts in this district. In Escardille, 2003 WL 21499999, Judge Giles addressed an ALJ's failure to discuss GAF scores when reaching a decision on a claimant's disability status. The claimant in Escardille had received a GAF score of 50, indicating "a serious impairment in social and occupational functioning," id. at *6, but the ALJ's summary of the treating physician's diagnoses did not mention the claimant's GAF score. Judge Giles found this failure fatal to the ALJ's ultimate determination that the claimant did not suffer from a disability because the claimant's GAF score contradicted such a determination. In reaching his decision, Judge Giles stated that the ALJ's "[f]ailure to provide . . . an explanation for non-consideration or rejection of a treating psychiatrist's opinion is contrary to Third Circuit precedent and requires reversal or remand." Id. at *6 (emphasis added) (citations omitted).

Subsequent case law in this district echos Judge Giles' conclusion that remand is necessary where an ALJ fails to specifically discuss or examine a claimant's GAF scores. See,

---

[2]First, at step three of the five-step sequential analysis, the ALJ's opinion stated:

An initial psychiatric evaluation report from WES Health Centers, dated September 21, 2006 . . . indicated that the severity of the claimant's mental health limitations is reflected by a score of 55 on the Global Assessment of Functioning (GAF) scale. The Diagnostic and Statistical Manual of Mental Disorders provides that a score of 55 on the GAF scale is reflective of moderate symptoms or moderate difficulty in social, occupational, or school functioning.

(R. 26 (emphasis in original) (internal citations omitted).) Second, at step four of the five-step sequential analysis, the ALJ's opinion stated: "An initial psychiatric evaluation report from WES Health Centers, dated September 21, 2006, provided that the severity of the claimant's mental health limitations is reflected by a GAF score of 55, which is reflective of moderate symptoms. (R. 30 (internal citations omitted).)

e.g., Watson, 2009 WL 678717, at *6 ("[C]ase law from this district is . . . explicit that a remand is necessary when an ALJ fails to specifically discuss GAF scores."); Nelson v. Astrue, 2009 WL 1871965, at *7 (E.D. Pa. June 26, 2009) ("Case law is clear that remand is necessary when an ALJ fails to specifically discuss GAF scores."); Glover v. Astrue, 2008 WL 517229, at *1 (E.D. Pa. Feb. 27, 2008) ("Courts in the Eastern District of Pennsylvania have repeatedly noted that GAF scores constitute medical evidence that is accepted and relied on by physicians, and that where an ALJ fails to explain why the scores have been discounted, a remand is necessary."); Robleto v. Barnhart, 2006 WL 2818431, at *8 (E.D. Pa. Sept. 28, 2006) ("This Court has repeatedly held that an ALJ's failure to explain how he weighted and discounted the significance of a claimant's GAF score requires a remand for the ALJ to clarify the basis of his holding."); Dougherty v. Barnhart, 2006 WL 2433792, at *9-10 (E.D. Pa. Aug. 21, 2006) ("Because a GAF constitutes medical evidence accepted and relied upon by a medical source, it must be addressed by an ALJ in making a determination regarding a claimant's disability."); Colon, 424 F.Supp.2d at 813-14 ("In light of Plaintiff's total GAF score history, the ALJ was required to discuss his reasons for not even considering the two GAF scores of 50, leading up to the disability determination in this case.").

For instance, in Span ex rel. R.C. v. Barnhart, 2004 WL 1535768 (E.D. Pa. May 21, 2004) (Baylson, J.), this Court held that an ALJ's determination of a claimant's level of function was not supported by substantial evidence because the ALJ failed to explain how he weighed and discounted the significance of the claimant's GAF scores. Id. at *9. The ALJ had relied upon the findings of a particular doctor in concluding that the claimant's condition did not meet the requirements to be considered disabled under the law. Id. at *7. Ultimately, this Court remanded

the case so the ALJ could clarify the basis for his holding, stating:

> [N]owhere in his decision does the ALJ explain how he weighed and discounted the significance of [Plaintiff]'s GAF scores . . . . Absent from the ALJ's discussion is any meaningful indication of how he considered these GAF scores or discounted their significance. <u>Based upon the ALJ's failure to consider this evidence, the Court cannot conclude that the ALJ's determination is supported by substantial evidence</u>. . . . Here, the ALJ's written opinion does not evidence that he seriously considered and weighed the importance of these scores. . . . Although the ALJ did provide an explanation regarding the evidence he relied upon, <u>he did not disclose his reasons for discounting other evidence</u>. Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994).

<u>Id.</u> at *6-8. Similarly, in <u>Watson</u>, 2009 WL 678717, Judge Diamond, adopting the Magistrate Judge's R&R, required remand where an ALJ failed to address GAF scores of 50 or below, stating:

> As plaintiff correctly notes, the record contains six [of Plaintiff's GAF scores], <u>four of which assign a score of fifty (50)</u>. . . . Despite these six [GAF] assessments in the record, the ALJ's opinion <u>provides no indication as to whether she considered these scores, or reasons for discounting their significance</u>. Defendants are correct that the ALJ's opinion does find [Plaintiff]'s ADHD and depressive disorder to be severe impairments and summarizes the resulting functional limitations, <u>but these findings do not excuse the ALJ's failure to specifically discuss the six GAF scores</u>. . . . Accordingly, I respectfully recommend that this matter be remanded so that the ALJ can discuss the GAF scores.

<u>Id.</u> at *5-7 (emphasis added). Again, in <u>Nelson</u>, 2009 WL 1871965, Judge Stengel, adopting the Magistrate Judge's R&R, required remand where an ALJ failed to address GAF scores of 50 or below, stating:

> [T]he record contains multiple GAF scores of fifty or below. . . . [The] ALJ <u>failed to mention the multiple GAF assessments in the record</u>. Furthermore, the ALJ's opinion provides <u>no indication whether he considered these scores, or any specific reasons for discounting their significance</u>. Because the ALJ failed to consider this evidence, this court is <u>unable to conclude that the ALJ's disability determination is supported by substantial evidence</u>. Accordingly,

> this court recommends that this case be remanded for consideration of plaintiff's GAF scores in conjunction with the other mental health evidence in the record and their effect on her RFC.

Id. at *6-7 (emphasis added).

The present case is akin to Span, Watson, and Nelson because here, the ALJ's written opinion, while mentioning Plaintiff's GAF score of 55 received in September 2007, failed to address or examine Plaintiff's five GAF scores of 50 or below received between March 2006 and December 2007. The Commissioner fails to discuss the cases cited above, from which the Court concludes that they are not distinguishable.

Because a GAF score constitutes medical evidence accepted and relied upon by a medical source, it should be addressed by an ALJ in making a determination regarding a claimant's disability. Clearly, the five GAF scores of 50 or below received by Plaintiff indicate serious symptoms. Yet, after examining the record and the GAF scores contained therein, the Court finds that while the ALJ provided an explanation regarding the evidence upon which she relied, the ALJ failed to disclose any reasons for not considering the five GAF scores of 50 or below received by Plaintiff. For this reason, the Court is unable to conclude that the ALJ's disability determination is supported by substantial evidence, and remands the case for consideration of plaintiff's GAF scores in conjunction with the other mental health evidence in the record and their effect on her RFC. The Court makes clear that it does not find that the GAF scores in question necessarily indicate that Plaintiff is "disabled" under the Act. Instead, the Court merely requires that the ALJ, on remand, address the multiple GAF scores received by Plaintiff of 50 or below.

In coming to its decision, the Court points out that it is aware of Judge Giles' opinion in

Hendrickson v. Astrue, 2008 WL 3539621 (E.D. Pa. Aug. 11, 2008), a case where an ALJ's failure to mention GAF scores of 50 or below was <u>not</u> an error requiring remand. <u>Id.</u> at *4. The facts in <u>Hendrickson</u> are easily distinguishable from the present case. In <u>Hendrickson</u>, the plaintiff received GAF scores of 45-48 in 2005, 50 in 2006, 50 in February 2007, and 50 in May 2007, and all four scores were assigned by the same treating physician. <u>Id.</u> at *3, 4. The ALJ's written opinion failed to address the first GAF score of 45-48, but directly addressed the three subsequent GAF scores of 50. <u>Id.</u> at *4. Judge Giles reasoned that after the first GAF score of 45-48 was received, the three subsequent GAF scores received in the two years after the first GAF score "rendered the earliest GAF rating . . . obsolete and irrelevant. . . . [T]he ALJ was entitled to discount it." <u>Id.</u>

Such reasoning is clearly distinguishable from the present case. Here, the ALJ failed to address five GAF scores of 50 or below received by Plaintiff between March 2006 and December 2007, but did address one GAF score of 55 received by Plaintiff in September 2006. Thus, three of these Plaintiff's GAF scores – 45 on July 9, 2007, 42 on September 7, 2007, and 45-50 on December 18 – were assigned to Plaintiff <u>after</u> Plaintiff received her GAF score of 55. Nevertheless, the ALJ failed to address or explain her decision to ignore these scores. For this reason, here, unlike in <u>Hendrickson</u>, the preceding and subsequent GAF scores of 50 or below were not rendered obsolete and irrelevant, and the ALJ was not entitled to discount them.

**V.**     **Conclusion**

For the foregoing reasons, the Court concludes that while most of the ALJ's decision is supported by substantial evidence, the ALJ shall, upon remand, address Plaintiff's GAF scores of 50 or below, and the impact of such scores upon the assessment of Plaintiff's RFC. Accordingly,

Plaintiff's Motion for Summary Judgment is granted in part.

An appropriate Order follows.

O:\CIVIL 09-10\09-2650 West v. Astrue\West v. Astrue, 09-2650 - Memo SS Appeal.wpd